Good morning. May it please the Court. My name is Glenda Aldana Madrid of the Northwest Immigrant Rights Project. On behalf of the petitioner, Susana Alfaro Cabrera, I'd like to reserve two minutes for rebuttal, if I may. Just watch your time. Your Honors, at the heart of this case is Ms. Alfaro's church and family, which challenged the supremacy of the MS-13 gang in their local community by running a rehabilitation program for gang members seeking to leave the gang. The MS-13 responded with intimidation, threats, and murder. Both the agency and Ms. Alfaro agree that it was this work to diminish the gang's ranks that resulted in the MS-13's persecution. Where they disagree is whether this work, which was carried out through the church and led by Ms. Alfaro's family, can be divorced from the church, the family, and their political opinion. Well, let me start just a minute. Even if we were to suggest that this would be a protected group, did the IJ or the BIA ever find persecution, past persecution? Whether it rose to the harm of persecution, Your Honor? No, not whether it rose to the fact of persecution, but that there was past persecution, I guess. No, Your Honor. Because it seems to me that even if I buy your argument about the group, I've got to find that the IJ or the BIA said something about this is persecution, which is past persecution, so therefore you get the presumption. And I didn't find anything that they ever say that there's past persecution. That's correct, Your Honor. What they said was that Ms. Alfaro had failed to demonstrate that the MS-13's targeting of her family and church were on account of a protected ground. So even if I were to buy your argument, I would still have to remand, wouldn't I, to make sure that they would suggest there's past persecution? But it's the on account of. Past persecution is, I'm understanding, that's the conclusion. Yes. And the element that they found lacking was the on account of element. If I could have my question answered, I'm sorry. Certainly. If I could have my question answered. My worry is they never found any persecution here. And therefore, they concentrated all on the group. And so I'm trying to determine, do I have to remand to find the persecution, if you will? Your Honor, what the agency below failed to find was a nexus to a protected ground. So it was on the on account of element of past persecution. The agency did not make an express finding that the harm rose to the level of persecution. But they do refer to the targeting of Ms. Alfaro's family as persecution, and we would submit that the record is clear and that the harm itself rose to the level of persecution. But it is correct that the agency did not make a full finding as to whether she had demonstrated past persecution because it found that she had failed to demonstrate that the gang was motivated on account of a protected ground. So to be clear, the element they found missing in past persecution was on account of. That's correct, Your Honor. Thank you. Now, the BIA seemed to believe that the activism of the church and the family was mutually exclusive with the fact that they were carrying it out through a church and through their family, saying that the MS-13 was only motivated by a personal vendetta against the individuals involved in the rehabilitation efforts. They didn't say only. They said that was a possible alternative. Your Honor, that is correct. They said, with regards to the events... The BIA said there might have been two possible explanations, one of which may have been personal vendetta. The IJ said that it was unclear why the nephew was targeted, that he didn't know if the nephew was shot because there was some sort of connection to the church or whether the nephew was somebody who perhaps had resisted gang recruitment. So what they're suggesting is there could have been an alternative explanation. They said there were two permissible views of the evidence, Your Honor. And we submit that the record here and the evidence here compels a finding that there were no two permissible views of the evidence. There really was one permissible view of the evidence. Well, is there any evidence of a personal vendetta? Your Honor, the only evidence of a personal vendetta, I suppose, is that individuals were targeted. But there is no evidence... Is there any evidence of a personal vendetta apart from resistance to the gang? No, Your Honor. There isn't. And so the case law of the circuit has made clear in Flores Rios v. Lynch that a vendetta can be on account of a protected ground. And that's what we have here. Even if a purely retributory motive existed, in Tapia Madrigal v. Holder, this court also held that the existence of a retributory motive does not negate a valid asylum claim where a protected ground is also a central reason for the persecution. Let me ask you another question. It seems to me that this could characterize as general resistance to the gang. But I can't find where general resistance to the gang is. Resistance to the gang is a protected ground. Your Honor, I would counter that. This is definitely not general aversion or resistance to the gang. What we have here is a religious institution that went out affirmatively into the local community and encouraged gang members to defect from the gangs, offering up... Is that in the record? Yes, Your Honor. Where is it in the record? That is certainly in the record. Where is it in the record that they went out into the community and encouraged people to defect? If you look on pages 150 and 151 of Ms. Alfaro's testimony, Your Honor, she talks about the fact that the family worked with the gang members to encourage them to get out of that kind of life. They worked to rehabilitate them and to encourage them to retire from the gangs. Well, the thing that worries me a little bit about this, and this is why I asked the question, she was asked... She was a part of this group or this church who was doing this, but then she was asked, don't all the other churches, do you know of any church in El Salvador or, excuse me, in this country that doesn't do this? And she said, no, they all do this. Your Honor, I'm not exactly sure that... She never said that other churches engaged in what she did when her family led it. Her church was not merely preaching against the gangs, which is what churches often do. Her church was actually putting themselves out on the line by having a rehabilitation program. They ran out of their church, which was also the family home. And the gang itself, when it threatened Ms. Alfaro's sister, who was the church pastor, said that it was that church... It was that work of the church to help the young gang  It wasn't mere passive resistance to the gang. If the gang comes to you, oppose the gang. It's actively encouraging gang members to leave the gang and chipping away at the gang's power within that local community. Well, that's... I'm glad that I asked you the question because I want to check the record on that. That was a worry that I had. A general resistance is not enough. Somebody's got to do something more than generally resist. Would you agree? I agree, Your Honor, that the facts of this case demonstrate that here we have very clear religious activism driven by a religious mission that sets apart this case from what you often see in terms of opposition to the gangs in El Salvador. And the evidence here I'd submit then compels a finding of past persecution on account of religion and political opinion. We're running out of time, so forgive me for interrupting, but if we agree with you on past persecution, then what relief are you seeking? Your Honor, we would ask that you reverse the BIA's incorrect opinion and that you remand with instructions that Ms. Alfaro has demonstrated that she suffered past persecution on account of a protected ground. And? And just leave it for them to take from there? To reconsider her claims from that point forward? Well, Your Honor, we believe that DHS did not make arguments that would go to the questions of fundamental change in circumstances and the reasonableness of internal relocation. If the answer to my question is yes, you can just say yes. Well, Your Honor, we think that you can remand with more specific instructions that the agency So, what are you asking us to do? To remand with instructions that she has met her burden to demonstrate past persecution and for the agency to consider whether to grant asylum. But if she meets past persecution, that just gives her, if you will, a presumption as to That's what my colleague was asking you. Other than the assertions as to this group, and if there is past persecution, it doesn't seem to me there's any evidence in the record of future persecution other than having this reference, if you will, to the persecution by the group. What she's really asking you is, it doesn't seem to me we can really get to asylum because the future persecution has really not been addressed. That's not what I'm asking. I'm asking what you're asking us to do if we find, and I appreciate Judge Smith's clarification. I'm asking what relief you want. You're clear in your brief and in your argument today that you want us to rule that the record compels a finding of past persecution. I think under Ventura, very clearly, we couldn't go farther than that, and I agree with Judge Smith on that point. I think that's what he's suggesting because the agency hasn't. But your brief also talks about, forgive me, the request for humanitarian relief that went unaddressed because there wasn't finding of past persecution, and that would have to be taken up on remand. We would not reach that. You're not asking for that. We think that the record is clear that she satisfies both of those, Your Honor, but if you don't feel that's proper, then obviously we would require a remand. All right. Before you leave, Judge Payne, do you have any questions? What proof is there that she was at the risk of torture? Your Honor, in 2014, the gang threatened her directly with raping, cutting, and murdering her if she did not accede to their demands, and I can give you a record site when I come back. That was when they were trying to get money from her and her partner, is that right? It's correct that they were asking for money, but they also made explicit reference to her family and knowing all about her family. Hang on. Judge Smith? No. Okay. Thank you. Thank you. You can plan that when you come back, we'll put another minute on the clock for you so you can be preparing your notes accordingly. Good morning, Your Honors. May it please the Court, Ben Zeitlin on behalf of the Attorney General. Good morning. The first thing I'd like to do, Your Honors, is address Judge Smith's question about persecution. Sure. And then I'll go to the main issue in the case, which is the unaccount of and the nexus part. It's the government's position that the board and the immigration judge did not address the issue of persecution in this case with respect to whether or not the past harm reaches the level of persecution. The only issue in this case that the agency addressed with respect to asylum and withholding of removal is whether or not the gangs targeted Petitioner on account of her protected grounds. So you would want us to not reach that issue either. Is that right? Well, I would submit that if the Court finds that there was a nexus or that remand is necessary because of the unaccount of prong, that it'd have to be sent back to the board for a determination on persecution because... Sorry. I didn't mean to interrupt you. No, go ahead. But I just did. I'm sorry. Is it the government's position this doesn't rise to the level of? Well, it would be the government's position that the agency hasn't reached that determination that doesn't rise to the level. Okay. Because you're not taking the position that the murdered nephew and the murdered uncle doesn't rise to the level of just that it's not been reached.  Okay. I appreciate that clarification. You would just submit that it's not... Didn't they just assume it, both the IJ and the BIA? I mean, it says from the BIA decision, because we agree with the immigration judge that the respondent did not establish past prosecution as the harm she experienced was not on account of protected ground, we disagree with the arguments that they aired, et cetera. Your Honor, it's the government's reading that that sentence that the board wrote goes specifically to the unaccount of prong, and I believe that's on the second page of its decision, and it says the reason she did not meet past persecution was specifically because the harm was not on account of. It doesn't discuss the level of harm and whether or not it rises to the level of past persecution. With respect to, I think, the main part of the case, which is the unaccount of prong, the immigration judge and the board determined that after examining the evidence, the record and the testimony, that petitioner failed to present evidence that those that harmed her did so because of her religion, family, or political opinion. And as the Supreme Court has held, and as this Court has held, the agency has to look at motive, and when looking at motive, you have to examine whether or not the persecutors, whose motive it is we're looking at, knew or believed that the applicant had a protected ground and was targeted because of that reason. And in examining the evidence, the immigration judge and the board concluded that the evidence did not find that the persecutors were motivated to harm petitioner because of a protected ground. Unfortunately, El Salvador is a country that is replete with gang violence. Petitioner was threatened on occasion in 2014, which had to do with extortion. There's no link between that and religion or political opinion. That's her own business ownership status. That's correct. That's the second part. That's correct. The first part about personal vendetta, now we're really going at that. And that's why I asked counsel about this. There's no question we cannot find that there would be this protected group with just a general resistance to gang membership. So, I guess I'm trying to figure out what is there in this record that would suggest it's more than a general resistance to gang membership. And you heard what she responded to you, to me. They went out and recruited people to come in to their hospitals or to the church to give them help. They went out and tried to do something that would actually support the idea that they did not support the gangs. I didn't say it as well as she did, but how do you respond to that? Well, Your Honor, that's not my understanding of the record and that's not what the immigration judge concluded. While Petitioner's position was that the church articulated an anti-gang sentiment, there is no evidence, I believe that was stated, that they went onto the street corners and protested or tried to recruit people. I didn't come across that in the record, and perhaps I'm mistaken, but I didn't see that anywhere. Did you think that the citation that she read from the record, the lady's testimony, showed that they went out and recruited? My understanding is that, and the quote from Petitioner on page 150 of the record was, they helped gang members to retire from gangs. They were involved in drugs, alcohol, these youngsters, my sister and her husband, that's what they helped them. In reading her declaration, I didn't see anywhere. That doesn't say that they went out and recruited people so that what they were doing was publicly known. That's right. The only thing... Excuse me, Counselor. There are two other sites. If you could turn your attention to them at 157-58 and at 208. At 157, it says that she testified, she was found credible, of course, that the gangs were really, quote, really mad and angry against them because the young gang members were being helped by the church and that the family were going to be killed one by one, year by year. The second is that nephew Douglas was trying to get away from gangs, so he moved into the family home. The gang called the family home and said they would kill her, whole family, because of what the gang was doing, and they specifically mentioned Douglas, and then she testifies about the gang members coming into the church and shooting this child, murdering him in the church. What about that? And there's no dispute that that occurred and she was found credible with respect to that. Can I... Forgive me, I didn't ask a good question, but I want to give you a chance to answer all of it. So, the other part that I find very troubling is that the uncle, who was the minister in the church, of course, was murdered also, and when they found him, his body showed signs of torture, specifically that his ears were cut off and that his eyes were gouged out, which would be consistent, certainly, circumstantial evidence that the gang was not happy with him meddling in their business. So, what about that? Your Honor, I don't disagree that, and again, I mentioned that, that these were events that one could infer if, I mean, the immigration judge... But is there any evidence? I appreciate that. So, then, maybe, could you help me? Is there any evidence to indicate anything else by way of personal vendetta? What does this mean, that there's a... It seems very speculative to suggest it's anything else. Well, I think the immigration judge is in the best position to analyze the facts and read, you know, having taken a view, viewing the testimony, reading the record, came to a conclusion that the inferences that these were possibly based on religious motivations were actually more akin to personal retribution or personal vendettas, which is what I believe the immigration judge generally sees, or cases where people resist gang violence. And the record makes that clear, that individuals who resist gang violence, the gangs are very intent on making sure that they, you know, the gangs can keep their power and consolidate their power. How can you gut the gang any more effectively than helping people get out of it? And if the gang knows that, why isn't that what happens in response to that on account of? Well, I think, and then that goes to, you can be against the gang, but that doesn't mean that it's a protected ground. If this was a secular club, for instance, and that was advocating against people being in a gang, that wouldn't be a protected ground either. But they didn't just oppose the gang in a belief that they held to themselves. They were out there in the community, according to her testimony, you're absolutely right that the IJ is in the best position to gauge that, and the IJ found her credible. So I'm just looking at, you know, from this evidence in the record, how we reach any conclusion other than this is on account of. Well, again, the government would submit that the court would have to find that the record compels a conclusion that she was persecuted on account of a protected ground. It is, there was no testimony that when the gang's members came in and shot her nephew or when they, there's no evidence that when they killed her brother-in-law that they did so because of a protected ground. There's no evidence as to what they said. But this is the rare case where they have direct testimony about receiving a threat that we're going to kill you because of this work. That's pretty unusual. Well, I'm not sure as to, there's a testimony that, is this, and I just want to make sure, this is the testimony that where her sister was called or is this the testimony where she was? Yes, the family was called. They were going to be killed one by one year by year because of their helping the gangs. The gangs really upset with them for this reason, is this testimony I just read. Sure, and that I think goes to the gang was upset with them for trying to take members of the gang away from them as opposed to it being because of a religious reason or being because of. But they were trying to take them away because that's what their religion taught, as I understood the record. Is that an erroneous understanding? Well, the immigration judge didn't find that. The immigration judge found that the reason the gang was unhappy with the family or unhappy with them was because the nephew was leaving the gang and the gang wants to protect its ranks and because, and we don't really know as to why the pastor was killed. Does it matter whether this is something the family was doing or whether it was a mission of the church or whether it's a political opinion? It strikes me that it's all the same situation. Those are all protected grounds that we've recognized and the evidence here seems so striking counsel. Sure, those are all protected grounds and the court, the agency didn't address specifically as to whether or not each one was a protected ground. They kind of just assumed that it was. And went with the nexus. Just went with the nexus. Okay, fair enough. And that was the only thing we have. Okay. Let me give Judge Smith a chance. So are you suggesting, Counselor, and this is really the big point to me. Are you suggesting that if a church is there and the church and this family being a part of the church goes out and if a young man comes to the church and says I need some help getting out of this gang and I need some help getting off drugs and alcohol and they help them do that, as long as the young man coming to the church, they haven't done enough more than just general resistance, that in order to get to the general resistance, they've got to do something more. They've got to recruit or they've got to demonstrate on the sidewalk or they've got to do something more than just generally help these people out of it. Is that what you're saying to me? Well, I would say that in order to tie it to a nexus, there needs to be evidence in each individual case as to the activities of the church or what the church is doing in this case that would make it on account of. So I hope that answers your question. Okay. Anything further? Did you question that this was a church just because it was in their family home? I mean, you're giving that away, aren't you? Yeah, there's no... The agency didn't hold in any way that this was not a church and they accepted those facts. Thank you. Thank you, Your Honors. Thank you very much. We'll put a minute on the clock if you'd like to be heard. Thank you. Sure. Your Honors, really quickly, on page 207 of the record, Ms. Alfaro's declaration says that her church reached out to the youth to stop using drugs and to leave the gang. So that reaching out is an affirmative act and it's not mere passive resistance or even waiting for a gang member to come to church and ask for help. They were affirmatively going out and asking and encouraging gang members to leave that life. Secondly, Your Honor, here there are obvious signs connecting this persecution to the church and to the family. The nephew was gunned down in church at the end of services in front of the congregation in a very public manner, in front of Ms. Alfaro, who took him to the hospital. Within three weeks of that, the pastor was kidnapped, mutilated, and murdered. And then shortly after that, on numerous occasions, the gang members attempted to break into the church after church services at a moment when the church was very visible in the public eye. So we'd submit that the evidence here compels a finding that Ms. Alfaro was persecuted on account of her religion, her family, and also her political opinion. Thank you very much. Thanks for watching the clock so carefully. That was impressive. Right on the money. Yes. And thank you both for your argument. It was very, very helpful. We'll take that case under advisement and we'll go on to the next case on the record.
judges: N.R. Smith, Christen, Payne